SAMUEL ECCLES, Jr., Grand Receiver, &c., *vs.* THE
DROVERS AND MECHANICS' NATIONAL BANK.

*Receiver—Deposit and Payment—Evidence.*

Where the receiver of a corporation received a draft for the
benefit of an individual, with the request that he collect the
same for her, the corporation having no interest whatever
therein, and deposits the same in his account as receiver,
and obtains a credit therefor, there is an obligation on the
corporation to repay such individual the amount of the pro-
ceeds of the draft, and therefore is not prejudiced by the
giving of a check by the receiver to such individual in payment
of said amount.

Where the receiver of a corporation deposited to his credit as
receiver, a draft for the benefit of an individual, which she
had requested him to collect for her, evidence is admissible
to prove, without first showing the existence or contents of
the draft, that the account of the receiver had been credited
with the amount of the draft.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN,
ROBERTS, McSHERRY and BRISCOE, J.

*George G. Carey, Jr.,* and *John Prentiss Poe, Attor-
ney General,* for the appellant.

*James McColgan,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The appellant, Samuel Eccles, Jr., was appointed Grand
Receiver of the Grand Lodge of Maryland of the Ancient

Order of United Workmen, in the place of one Myer Hirsch, who had been removed from this position. Hirsch kept an account of the funds, as such receiver, with the appellee, the Drovers and Mechanics National Bank of Baltimore, and the appellant, upon being appointed his successor had also opened an account with the same bank.

On June 16th, 1893, the appellant drew a check for the sum of $1,919.82, being the sum appearing from his bank book, to be due him, as such receiver, which was presented to the bank, but payment was refused, and the check protested. And this suit was brought upon the protested check to recover the amount claimed to be due thereon.

The appellee filed the usual pleas of never indebted and promised as alleged, and a plea of set-off for $1,879.67, being an indebtedness on account of alleged overdrafts by Myer Hirsch, the removed receiver of the Order.

At the trial, the Court rejected the prayers of both plaintiff and defendant, and granted an instruction of its own. The verdict was for the plaintiff for $40.15, a *non pros.* entered, and, the judgment being for the defendant, the plaintiff has appealed.

One bill of exception on the part of the plaintiff contains all the evidence and all the prayers, and it is upon this that the questions arise for our consideration.

It is admitted that the check drawn by the appellant was for the correct balance shown by his bank book to be standing to his credit, if the set-off should not be allowed.

It appears that on the 23d of Feb., 1893, Myer Hirsch, receiver, had a balance of $1,776.14 to his credit, as such receiver, in the appellee bank. On the 6th of March, 1893, he made a deposit of $3,831.15, of which $831.15 was the property of the Order of United Workmen and $3,000 was a draft on New York, payable to Mrs. Mary E. Smith, and which she had entrusted to him for collection, and which he deposited in his account as Grand Receiver, and had, as such, obtained a credit therefor. Hirsch testified that all

the orders and checks drawn by him were in the usual course of his business as Grand Receiver, and all of said orders, warrants or checks were for obligations of said Order of United Workmen, excepting a check known as No. 1067, dated March 11th, 1893, for $3,000, which was drawn by him, as Grand Receiver, in favor of Mary E. Smith, to return to her the amount of the overdraft received from her for collection, and deposited March 6th, 1893.

And it was further shown that Hirsch continued his account with the bank until April 8th, 1893, when it was balanced, and found to be overdrawn in the sum of $1,879.67. Upon this state of facts, the Court instructed the jury: "And the jury is further instructed that, if they find that said Hirsch received a check from the Royal Arcanum for the benefit of Mary Smith, with the request that he collect the same for her, and that the said Grand Lodge had no interest whatever in said check, or its proceeds, but that the same was deposited on March 6th, 1893, by said Hirsch, in his said account, and that the proceeds thereof were credited in said account, and were applied to the benefit of said Grand Lodge, then there was an obligation on said Grand Lodge to repay the said Mary Smith the amount of the proceeds of the check aforesaid; and if the jury find that the check of said Hirsch, dated March 11th, 1893, to the order of said Mary Smith, was simply in repayment of moneys belonging to her from the Royal Arcanum check aforesaid, which had been deposited and applied as aforesaid,—if they so find, then the same was given in payment of an obligation of said Grand Lodge, and the said Grand Lodge was not prejudiced by said check to said Mary Smith." This instruction we think placed the case properly before the jury, and contains the law of the case.

Manifestly the check from Hirsch as Grand Receiver to Mrs. Mary E. Smith for $3,000 did not prejudice the Grand Lodge, because it is shown that all of the overdrafts went to pay the obligations of the Lodge.

Balt. & Ohio R. R. Co. *vs.* State, use of Strunz.

But it is insisted that there was error in the rejection of the plaintiff's first prayer, which asked the Court to exclude from the jury the testimony in relation to the deposit of the Smith draft for $3,000, because the existence or contents of the draft had not been shown.

We find no error in this ruling. It was not the contents of the draft which was proven, but the fact that the account of the Grand Receiver, Hirsch, had received a credit of $3,000 which belonged to Mrs. Mary E. Smith, and not to the Grand Lodge, and which he had a right to pay to her. *Bowen vs. National Bank of Newport*, 11 *Hun*, 227.

Finding no error in the rulings, we shall affirm the judgment.

*Judgment affirmed.*

(Decided 19th June, 1894.)